Julius I. Peyser v. Commissioner. Julius I. Peyser and Miriam I. Peyser v. Commissioner.
Peyser v. Commissioner
Docket Nos. 108711 and 108712.
United States Tax Court
1943 Tax Ct. Memo LEXIS 391; 1 T.C.M. (CCH) 807; T.C.M. (RIA) 43138; March 23, 1943
*391 Robert R. Faulkner, Esq., 940 Shoreham Bldg., Washington, D.C., for the petitioners. Philip H. Bayer, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: These proceedings are brought for redeterminations of deficiencies in income tax in the amount of $2,796.48 and $883.97 for 1938 and 1939, respectively. Three issues are presented. They are whether petitioner is entitled to an increased deduction for the cost of operating an automobile in connection with his profession and business for 1939; whether petitioner is entitled to an increased deduction for the amounts expended in 1939 for books and publications connected with the practice of his profession; and whether petitioners on the cash basis, are entitled to a deduction for interest alleged to have been paid for the years in question. [The Facts] Miriam I. Peyser is the wife of Julius I. Peyser and is petitioner in Docket No. 108712 by reason of their having filed a joint return for 1938. Julius I. Peyser hereinafter will be referred to as petitioner. Petitioner is a lawyer who has been engaged in the practice of law in the District of Columbia since 1899. His tax returns were filed with the collector of *392 internal revenue for Baltimore, Maryland, and they, together with his books and records, were on a cash receipts and disbursements basis. His offices are in the Investment Building which is located at Fifteenth and K Streets, N.W., Washington, D.C. In addition to his practice of law, petitioner, during the periods in question was an officer or director of several companies. His office staff comprised five lawyers, in addition to himself, four assistants and a group of stenographers. In connection with his profession and business petitioner maintained an automobile for use during the day. The car was kept parked on a lot adjacent to the building in which his office was located. Petitioner personally used the automobile to drive from his home to his office and back. He lived at the Wardman Park Hotel at the corner of Woodley Road and Connecticut Avenue, in Washington. The mileage consumed for such personal use was approximately three miles a day. Petitioner drove his car approximately 7,000 miles a year, of which 1,000 involved trips between office and home. He paid 15 cents per gallon for gas and was able to drive 9 miles per gallon. Petitioner paid $10 or $12 a month for a garage *393 for the car at the Wardman Park Hotel. Petitioner had the car oiled and greased on an average of every 500 miles at an approximate cost of $2.50 per job. He had the car washed twice a week at a cost of 75 cents each time. Petitioner expended $243.53 and $338.18 for 1938 and 1939, respectively, for car expenses for such items as repairs, taxes, parking space, insurance and isolated instances of car washing and greasing. During 1938 and 1939 he spent approximately $226.67 a year for gas, oil, greasing, and washing. His total expenditures for 1938 were therefore approximately $470.20, which included $91 for parking space rental. The total expenditures for 1939 were approximately $564.85, which included $92 for parking space. Respondent allowed $497 for each of the two years. Petitioner expended $874.08 for current legal publications of short life. In addition to the items now conceded by petitioner, those originally claimed but not included in the figure stated are: Binding
$29.15
National Georgraphic Magazine
3.00
National Jewish Ledger
5.00
Contemporary Jewish Record
1.00
Washington Law Reporter
5.00
Federal Digest - 1939 Annual
10.00
Books by Dr. Joseph Brunner
5.00
Photograph of Members of Supreme
Court
10.00
U.S. Digest Court Rules
3.50
*394 During the periods in question petitioner had outstanding a number of policies of insurance on his own life against which there were loans of varying amounts. During each of the years interest became due on the loans in the respective amounts of $5,264.34 and $5,539.50. Premiums aggregating $15,992.24 and $15,706.24 for 1938 and 1939, respectively, were also due and payable. In meeting these obligations for 1938 petitioner paid $7,501.57 in cash, applied $2,940.21 dividends due him, and increased his policy loans by $10,814.74. He met his 1939 obligations by cash payment of $10,354.24, application of $2,649.52 dividends due him, and by increasing his policy loans $8,241.97. No part of the interest in question was paid in cash. The insurance companies, pursuant to agreement contained in the policies, increased the principal amounts of the loans by the amounts of interest, and new notes were given to cover the increase. Dividends from mutual companies were credited to the premiums in accordance with instructions by petitioner to this effect. Payment was made of part of the difference between the amount of the premium and the amount of the dividend. Respondent allowed a deduction for *395 interest of $399.67 for 1938 and $1,282.11 for 1939. Differences between the amounts claimed and the amounts allowed of $4,864.67 and $4,257.39 for 1938 and 1939, respectively, were disallowed because "no payment of such interest was made during the taxable year." [Opinion] The evidence shows the sufficiency of the amounts which respondent allowed, for the cost of operation of petitioner's automobile, as deductible expenses of his business. Taking the figures as given by petitioners and recognizing his burden of proof only to the extent of applying these sums in their aspect most unfavorable to him, the amounts spent were $470.20 and $564.85, respectively, for the two years. . Costs of garaging the automobile at petitioner's hotel have not been included since this has not been shown to have been necessary except for the personal use he made of the car in driving between home and office. For a similar reason and amount approximately one-seventh of the total expenses must be deducted, as to that extent concededly the car was devoted to petitioner's personal use. , *396 affirmed (C.C.A., 6th Cir.), . The remaining six-sevenths leaves the amounts slightly less than those allowed by respondent. We have found and included in the findings of fact the total which in our view is justified by the record as a deduction for legal publications. The list is long and the individual items insignificant. We have accordingly refrained from inserting the details, except as to the items disallowed. These include publications not shown to be related to petitioner's law practice, or not shown to have a short life. The final issue raises the question whether petitioner's payments to insurance companies in the tax years can be considered to include interest on policy loans. Since petitioner was on the cash basis, he concededly would have been entitled to no deduction for interest except for payments made in cash or its equivalent. . The contention, however, that the amounts actually transmitted to the insurance companies were in payment of interest cannot survive an examination of the record. From this it appears that in each case the creditor, following the agreement *397 made by the parties, applied the cash payment to premiums due, and added the interest, which remained entirely unpaid, to the amounts of the outstanding loans. As a question of fact, to which we think this contention reduces, there is in our view no conclusion possible save that the interest in question remained unpaid as far as any cash transaction was concerned. Petitioner makes the further contention that in any event the payment was made by a corresponding reduction in the reserve accumulated under the respective policies. This contention, as he admits, has several times been rejected. ; . On the authority of those decisions, and for the reasons stated, the claim must be disallowed. Decisions will be entered under Rule 50.